THOMAS *v.* CONTINENTAL MOTORS CORP.

1. Workmen's Compensation—Sand Blaster—Silicosis—Pneumoconiosis—Evidence.

Department's finding that disability and death of sand blaster by reason of pneumoconiosis was due to his work *held,* supported by evidence presented in dependent's proceeding to recover workmen's compensation under the occupational disease amendment of the workmen's compensation act, where it appears decedent had been engaged in sand blasting of metal for purpose of polishing off particles (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

2. SAME—PNEUMOCONIOSIS.

Pneumoconiosis contracted in the course of employment was a
disease for which workmen's compensation was payable un-
der the occupational disease amendment as it was originally
enacted (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.],
as added by Act No. 61, Pub. Acts 1937).

3. SAME—SAND BLASTER—TRANSFER TO OTHER WORK BECAUSE OF
LUNG CONDITION—DISABLEMENT—OCCUPATIONAL DISEASE.

Where sand blaster was transferred from his work as such to
another job because of the condition of his lungs and never
allowed to return to such work due to nature of such em-
ployment, he suffered a "disablement," as of the date of the
transfer, as such term is used in the occupational disease
amendment of the workmen's compensation act (Act No. 10,
pt. 7, § 1, Pub. Acts 1912 [1st Ex. Sess.], as added by Act
No. 61, Pub. Acts 1937).

4. SAME—TEST OF RIGHT TO COMPENSATION.

The test of an employee's right to workmen's compensation is
his inability to work and earn wages in the employment at
which he was engaged when disability occurred.

5. SAME—OCCUPATIONAL DISEASE—RIGHT TO COMPENSATION FOR
TOTAL DISABILITY.

Under the occupational disease amendment to the workmen's
compensation act, the right to compensation for total dis-
ability is not dependent upon the employee's total disability to
perform any work, it being sufficient merely to show that he
was disabled from earning full wages at the work in which
he was last subjected to the conditions resulting in disability
(Act No. 10, pt. 7, § 1, Pub. Acts 1912 [1st Ex. Sess.], as
added by Act No. 61, Pub. Acts 1937).

6. SAME—DUST DISEASE—DATE OF DISABILITY—DEPENDENCY COM-
PENSATION.

Where disability due to dust disease occurred prior to effective
date of 1943 amendment of occupational disease amendment
of workmen's compensation act, award of compensation was
properly made to dependents in accordance with statute as it
stood before amendment as the law which controls the com-
pensation is that in effect at the time the right to the com-
pensation springs into existence, notwithstanding employee
died after effective date of 1943 amendment which increased
compensation payable (Act No. 10, pt. 7, § 4, Pub. Acts 1912
[1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and
amended by Act No. 3, Pub. Acts 1937 [Ex. Sess.], and Act
No. 245, Pub. Acts 1943).

7. SAME—DEATH BENEFITS—DEPENDENCY COMPENSATION—DATE OF DISABILITY.

While the right of action for death benefits under the workmen's compensation act accrues at the date of death of the employee, the right of action for dependency compensation because of death arises at the date of disability, at which time the right to the compensation springs into existence.

8. COSTS—EACH PARTY PREVAILING ONLY IN PART.

No costs are allowed where each party has appealed and has prevailed only in part.

Appeal from Department of Labor and Industry. Submitted April 9, 1946. (Docket No. 91, Calendar No. 43,237.) Decided June 3, 1946.

Evelyn M. Thomas, widow of James H. Thomas, presented her claim against Continental Motors Corporation, employer, for compensation for death of her husband from occupational disease. Award to plaintiff. Defendant appeals. Plaintiff cross-appeals. Affirmed.

*Maurice Sugar* (*Benjamin Marcus* and *Jerome W. Kelman,* of counsel), for plaintiff.

*Joseph T. Riley,* for defendant.

BOYLES, J. On leave granted the defendant appeals in the nature of certiorari from an order of the department of labor and industry awarding dependency compensation and death benefits to plaintiff for the death of her husband, James H. Thomas. Admittedly defendant's deceased employee, James H. Thomas, died by reason of silicosis or pneumoconiosis. The defendant claims that his death was due to silicosis and not to pneumoconiosis, that sili-

cosis was not compensable under the original occupational disease amendment * added to the workmen's compensation law as part 7, unless contracted in mining; that silicosis first became compensable when contracted in the work here involved, sand blasting, on July 30, 1943, the effective date of the 1943 amendment (Act No. 245, Pub. Acts 1943 [Comp. Laws Supp. 1943, § 8485-1 *et seq.*, Stat. Ann. 1944 Cum. Supp. § 17.220 *et seq.*]). Plaintiff's husband became disabled prior to July 30, 1943.

Mr. Thomas began working for the defendant company in 1922; on December 28, 1936, he commenced working as a sand blaster and continued in this work until June 3, 1937. He was rehired as a sand blaster on March 18, 1938, and worked until August 24, 1939. He was again rehired as a sand blaster on October 11, 1939, and worked until December 7, 1939. On the latter date he was transferred to other work on account of the condition of his lungs and was never put back on sand blasting. Later, X-rays were taken of his lungs and the presence of silicosis revealed. He continued working in the defendant's employ in the same department, doing heat treating, until June 13, 1943, when he became *totally* disabled by reason of silicosis or pneumoconiosis. He died on April 14, 1944, as a result of such condition.

The duties of a sand blaster were to blast the scale off steel with a stream of sand applied by an air nozzle. There is no question but that Mr. Thomas' disability and death was due to this work and neither can there be any question but that pneumoconiosis if so contracted was compensable

---

* Act No. 61, Pub. Acts 1937, amending Act No. 10, Pub. Acts 1912 (1st Ex. Sess.).—Reporter.

under the occupational disease amendment as originally enacted in 1937, which provided:

"*Schedule of diseases.*

"SEC. 2. The disablement of an employee resulting from an occupational disease or condition described in the following schedule shall be treated as the happening of a personal injury by accident within the meaning of this act and the procedure and practice provided in this act shall apply to all proceedings under this part, except where specifically otherwise provided herein:

| "Disabilities arising from | Caused by |
| --- | --- |
| * * * | |
| "29. Stone worker's or grinder's phthisis | Quarrying, cutting, crushing, grinding or polishing of stone, or grinding or polishing of metal. |
| "30. Silicosis | Mining. |
| "31. Pneumoconiosis | Quarrying, cutting, crushing, grinding or polishing of metal." |

There is testimony in the record to support the finding of the department that the disability and death of Mr. Thomas was caused by pneumoconiosis arising from sand blasting of metal for the purpose of polishing off the particles. This was compensable under Act No. 61, Pub. Acts 1937, and as to that, the award must be affirmed.

Defendant here makes the claim that there is no competent evidence to show that the occupational disease which resulted in the death of Mr. Thomas arose under the circumstances delineated in Act No. 10, pt. 7, § 5, Pub. Acts 1912 (1st Ex. Sess.),

as added by Act No. 61, Pub. Acts 1937.* This section was as follows:

"Neither the employee nor his dependents shall be entitled to compensation for disability or death resulting from such occupational disease, unless such occupational disease is due to the nature of his employment and was contracted therein, or in a continuous employment similar to the one in which he was engaged at the time of his disablement, within twelve months previous to the date of disablement, whether under one or more employers. The time limit for contraction of the occupational disease prescribed by this section shall not bar compensation in the case of an employee who contracted such occupational disease in the same employment with the same employer by whom he was employed at the time of his disablement and who had continued in the same employment with the same employer from the time of contracting such occupational disease up to the time of his disablement thereby."

At the time of his disablement the statute, law recognized *partial* disability due to silicosis or other dust disease although allowing compensation only for "temporary or permanent total disability or death" from those occupational diseases (Act No. 10, pt. 7, § 4, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937). At the same time, "disability" and "disablement" were defined as follows (Act No. 10, pt. 7, § 1, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937):

"(a) The word 'disability' means the state of being disabled from earning full wages at the work at which the employee was last employed;

"(b) The word 'disablement' means the event of

---

* Repealed by Act No. 245, Pub. Acts 1943 (Stat. Ann. 1945 Cum. Supp. § 17.224).

becoming so disabled as defined in subparagraph (a)."

Under the above-quoted definitions Mr. Thomas became disabled from earning full wages at the work at which he was then employed—sand blasting—at the time when he was transferred to other work on December 7, 1939, by reason of the condition of his lungs, since which time he was never allowed to return to work as a sand blaster. His disability was due to the nature of his employment as a sand blaster, and "was contracted therein * * * within twelve months previous to the date of disablement," as defined in the act.

The test of an employee's right to compensation is his inability to work and earn wages in the employment at which he was engaged. *Smith* v. *Pontiac Motor Car Co.,* 277 Mich. 652; *Quick* v. *Dow Chemical Co.,* 293 Mich. 215.

In *Stewart* v. *Lakey Foundry & Machine Co.,* 311 Mich. 463, plaintiff's work was removing sand, lumps and excess metal from iron castings by the use of an air nozzle and chisel, producing much dust. He also worked near a sand-blast machine, which also exposed him to dust. This resulted in total disability from pneumoconiosis, and Stewart was awarded total disability compensation by the department. In affirming the award, the court said (pp. 467, 468):

"It (the department) also found that the disease of pneumoconiosis, with which plaintiff was afflicted, was caused by dust from the 'cutting, grinding or polishing of metal and was due to causes and conditions which are characteristic of and peculiar to the particular employment in which plaintiff was engaged' in defendant's foundry, and that this disease arose out of and in the course of said employment. The department further found that, because of

pneumoconiosis, plaintiff was unable to continue the skilled work as a chipper which he was performing when he contracted said disease, and that he was, therefore, totally disabled. It further found that he was disabled as of September 30, 1943, that being his last day of work at the employment in which he was last subjected to the dust conditions resulting in his disability. \* \* \*

"Defendant first contends that plaintiff would not be entitled to compensation unless he was totally disabled from performing any work. We cannot agree with this contention. Part 7, section 1, of the workmen's compensation law, as amended,\* defines disability as 'the state of being disabled from earning full wages at the work in which the employee was last subjected to the conditions resulting in disability.' "

In the case now before us the department awarded compensation to plaintiff at the rate of $18 per week from June 13, 1943, until a total of $3,000 has been paid. This award was made in accordance with Act No. 10, pt. 7, § 4, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 3, Pub. Acts 1937 (Ex. Sess.), which was as follows:

"Sec. 4. Compensation shall not be payable for partial disability due to silicosis or other dust disease. In the event of temporary or permanent total disability *or death* from silicosis *or other dust disease,* notwithstanding any other provisions of this act, compensation shall be payable under this part to employees in the employments enumerated in section two of this part, *or to their dependents* in the following manner and amounts: If disablement or death occurs during the first calendar month

* Act No. 10, pt. 7, § 1, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8485–1, Stat. Ann. 1945 Cum. Supp. § 17.220).

in which this act becomes effective not exceeding the sum of five hundred dollars; if disablement or death occurs during the second calendar month after which this act becomes effective not exceeding the sum of five hundred and fifty dollars; thereafter the total compensation and benefits payable for disability and death shall increase at the rate of fifty dollars each calendar month. The aggregate amount payable shall be determined by the total amount payable in the month in which disablement or death occurs. In no event shall such compensation exceed an aggregate total of three thousand dollars.''

We are not in accord with plaintiff's claim on cross appeal that plaintiff should have been awarded maximum compensation of $4,000, under the 1943 amendment.* Plaintiff claims that her cause of action having accrued at the time of the death of her husband, April 14, 1944, her rights should be governed by the law in effect at that date and that she should receive compensation from the date of the death of her husband until the total sum of $4,000 has been paid. The 1943 amendment increased the maximum to $4,000. In support of such claim plaintiff relies on *Allen* v. *Kalamazoo Paraffine Co.*, 312 Mich. 575. However, the *Allen Case* does not refer either to dependency compensation after death, or to death benefits. It holds that the cause of action for the loss of an eye accrues when the loss occurs, *i.e.*, when the employee suffers loss of industrial vision, and that compensation for the disability is fixed by the statute in effect at the time the loss of industrial vision occurred. Plaintiff also relies on *Mason* v. *Michigan Trading Corp.*, 308 Mich. 702. This case dealt with a claim by the widow of a deceased employee for expenses of her husband's last

---

* Act No. 10, pt. 7, § 4, Pub. Acts 1912 (1st Ex. Sess.), as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8485–4, Stat. Ann. 1944 Cum. Supp. § 17.223). The amendment by Act No. 318, Pub. Acts 1945, has no bearing on the case at bar.

illness and for $200 funeral expenses. No claim for dependency compensation was involved in the case. The court held that the widow's right of action *for death benefits,* namely, expenses of last sickness and funeral, did not accrue until the death of her husband, and therefore the statute in effect at the date of death controls. Quoting with approval from *Donoho* v. *Atlantic Basin Iron Works,* 210 App. Div. 535 (206 N. Y. Supp. 494), the court said (p. 705):

"'Although funeral benefits are included in the term "compensation" * * * they are death benefits. * * * The right to them does not exist till the death of the injured employee, on which event the right springs into existence as an original independent right. *Solomone* v. *Degnon Contracting Co.* (1920), 194 App. Div. 50 (184 N. Y. Supp. 735). * * * Not until the death of the injured employee did the rights of the parties become fixed. The law which must control the compensation to be paid is that which was in effect at the time the right to the compensation springs into existence.'"

The distinction between the *Mason Case, supra,* and the case at bar is apparent from the above quotation. The instant case involves both dependency compensation and death benefits. While the right of action for death benefits accrues at the date of death of the employee, the right of action for dependency compensation because of death arises at the date of disability, at which time "the right to the compensation springs into existence."

*Rueter* v. *Rinshed Mason Co.,* 303 Mich. 550, involved the right of the widow of a deceased employee to dependency compensation for silicosis resulting in death, under the same section of the act involved in the instant case. The department held that the plaintiff's right to compensation dated from the

death of her husband.  In reversing this award the court said (p. 554):

"While the language is not as clear as it might be, we are led to the conclusion that the department erred in not fixing compensation at the time of disability."

The *Rueter Case, supra,* is in accord with *Wolanin* v. *Chrysler Corp.,* 304 Mich. 164, where the court held (syllabus):

"Dependents of an employee who died after receiving some compensation are entitled to recover compensation for 300 weeks from date of injury less amount of compensation accrued to employee during his lifetime (2 Comp. Laws 1929, § 8428)."

In the instant case the department awarded dependency compensation in accordance with the statute in effect at the time the disability arose.  The department also awarded death benefits (expenses of last sickness and funeral) in accordance with the statute in effect at the time the death of the employee occurred.  The awards are affirmed.  Each party having prevailed only in part, no costs are allowed.

BUTZEL, C. J., and CARR, SHARPE, REID, NORTH, and STARR, JJ., concurred.  BUSHNELL, J., took no part in the decision of this case.