GERLESITS v. LAKEY FOUNDRY & MACHINE COMPANY.

1. WORKMEN'S COMPENSATION—PNEUMOCONIOSIS—SILICOSIS—FIND-
ING OF COMMISSION—EVIDENCE.

Compensation commission's finding that disability of chipper in
defendant's foundry by reason of pneumoconiosis was due to
his work *held*, supported by evidence presented in proceeding
to recover workmen's compensation under the occupational dis-
ease amendment of the workmen's compensation act, where
it appears plaintiff had been exposed to dust, had acquired
silicosis, a specific condition embraced within the general cate-
gory of pneumoconiosis, compensable under the act as amended
(Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added
by Act No. 61, Pub. Acts 1937).

2. SAME—OCCUPATIONAL DISEASES—DATE OF CONTRACTING A DIS-
EASE.

Under the occupational disease amendment to the workmen's
compensation act the date of contracting a disease starts when
symptoms appear (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex.
Sess.], as added by Act No. 61, Pub. Acts 1937).

3. SAME—CHRONIC DISEASES—INTERFERENCE WITH BODILY FUNC-
TIONS.

So far as the occupational disease amendment to the workmen's
compensation act is concerned, a chronic disease is contracted
when it first manifests itself so as to interfere with bodily
functions (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.],
as added by Act No. 61, Pub. Acts 1937, and amended by Act
No. 318, Pub. Acts 1945).

4. SAME—PNEUMOCONIOSIS—DATE OF DISABILITY—AGGREGATE COM-
PENSATION.

Where plaintiff's last day of work as a chipper in defendant's
foundry was December 4, 1942, and he suffered no injurious
exposure thereafter before his last day of work as a door
tender or sweeper on December 13, 1945, when he became dis-
abled from pneumoconiosis, the latter date was properly used

in determining aggregate amount of compensation payable since it was the date of disablement and there was no testimony that transfer was due to physical disability (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 318, Pub. Acts 1945).

5. SAME—STATUTES—ACCRUAL OF CAUSE OF ACTION.

In determining benefits under the workmen's compensation act, that law controls which is in effect when the cause of action accrues.

6. SAME—CONSTRUCTION OF STATUTES.

The workmen's compensation act and amendments relating thereto should be read and construed together.

7. SAME—PNEUMOCONIOSIS—AMENDMENT OF STATUTE—MAXIMUM COMPENSATION.

Where plaintiff's disability due to pneumoconiosis did not occur until after act amending the workmen's compensation act became effective, he was entitled to increased maximum amount of disability compensation as therein limited (Act No. 10, pt. 7, § 4, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 318, Pub. Acts 1945).

8. SAME—OCCUPATIONAL DISEASE AMENDMENT—RESTRICTION OF APPLICATION—REPEAL—DISABLEMENT.

Provision of occupational disease amendment to workmen's compensation act limiting recovery of compensation under such amendment to a disease contracted within 12 months previous to date of disability did not preclude recovery where disablement did not occur while such provision was effective (Act No. 10, pt. 7, § 5, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and repealed by Act No. 245, Pub. Acts 1943).

Appeal from Department of Labor and Industry. Submitted June 4, 1947. (Docket No. 19, Calendar No. 43,731.) Decided October 13, 1947.

Mike Gerlesits presented his claim against Lakey Foundry & Machine Company, employer, for compensation for occupational disease. Award to plaintiff. Defendant appeals. Affirmed.

*Charles A. Larnard*, for plaintiff.

*Joseph T. Riley,* for defendant.

Butzel, J. Defendant appeals from an order of the department of labor and industry awarding plaintiff compensation for total disability under the workmen's compensation law (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943, and Act No. 318, Pub. Acts 1945 [Comp. Laws Supp. 1940, 1945, § 8485–1 *et seq.,* Stat. Ann. 1946 Cum. Supp. § 17.220 *et seq.*]).

Plaintiff had worked in foundries since 1910. He entered defendant's employ in 1919, and, with the exception of four years in the early twenties when defendant had no work available for him, continued in its employ until December 13, 1945. During the four-year period while not employed by defendant, he worked in another foundry for two years. Up to December 4, 1942, plaintiff worked as a chipper in defendant's foundry and removed sand, scale and excess metal from iron castings by use of an air hammer. On December 4, 1942, he was transferred to other work, first as a door-tender and later as a sweeper in the shipping room. On December 13, 1945, he complained of a cold, obtained some pills from the company dispensary and went home early. He did not return to work, nor has he been gainfully employed since that date. On March 13, 1946, he applied for compensation, claiming total disability since on or about January, 1945, and, stating that the nature of his disability is "silicosis, lung disease."

At a hearing before a deputy commissioner on June 3, 1946, plaintiff testified that the use of an air hammer in chipping iron castings blew dust about the shop and that he was exposed to dust in the shipping room where he had worked more re-

cently as a sweeper. Plaintiff's medical witness, Dr. Louis LaFevre, testified that he examined plaintiff in February, 1946, and, on the basis of his examination and X-ray findings, diagnosed plaintiff's ailment as silicosis of both lungs; that in his opinion this was a chronic condition, but that he could not venture to say how many years plaintiff had been afflicted with silicosis. Defendant's medical witness, Dr. Leland·E. Holly, an X-ray specialist, stated that he had made X-ray films of plaintiff's chest on September 9, 1937, September 16, 1943, and had examined another chest X-ray film of plaintiff taken at defendant company on November 27, 1945, and submitted to him for reading and interpretation. He testified that each of the films showed evidence of a lung condition which he diagnosed as silicosis.

The deputy commissioner found that plaintiff had received a personal injury arising out of and in the course of his employment on December 4, 1942, the last day plaintiff had worked as a chipper in defendant's foundry; that his average weekly wage at the time of injury was $48; and that he was entitled to compensation at the rate of $18 per week for total disability from December 14, 1945, the date plaintiff left defendant's employ, but not to exceed in the aggregate the sum of $3,600.

On review, the commission upon its own motion entered an order to take additional testimony to determine whether plaintiff was suffering from pneumoconiosis and whether his occupation as a chipper involved the quarrying, cutting, crushing, grinding or polishing of metal. At a subsequent hearing, plaintiff called as his medical witness Dr. John L. Montgomery, an osteopathic physician specializing in X-ray work. He testified that he made an X-ray examination of plaintiff on September 24, 1943, and that his diagnosis of plaintiff's

condition was pneumoconiosis, silicosis and fibrotic adhesion of the right diaphragm. Asked on cross-examination to differentiate between pneumoconiosis and silicosis, the witness answered:

"Well, pneumoconiosis is a generalized term. It is defined as a disease of the lungs caused by in-halation of certain types of dust, usually accompanied by fibrous changes; and silicosis is a disease of the lungs caused by inhalation of minute particles of sand, flint or stone."

Defendant recalled Dr. Holly as a witness who stated on direct examination:

"Pneumoconiosis may be asbestosis due to inhalation of asbestos dust, siderosis due to inhalation of iron dust, the disease known as bagastosis that comes from the handling of wool, anthracosis that miners get, silicosis that those individuals get who are exposed to small particles of silica dioxide. All of those different diseases, only two of which are at all disabling, and then in their late stages, and those are silicosis and asbestosis."

In the opinion of the witness, plaintiff had a specific disease, *viz.,* silicosis, and his condition could not be described by the use of the generalized term, pneumoconiosis.

The compensation commission, following the hearing of September 27, 1946, found that plaintiff is afflicted with pneumoconiosis caused by "quarrying, cutting, crushing, grinding or polishing of metal," and entered an order modifying the award of the deputy commissioner so as to allow compensation at the rate of $21 per week from December 13, 1945, until an aggregate amount of $6,000 has been paid. The commission also found that plaintiff was en-

titled to medical expenses as provided by part 2, § 4, of the compensation act.*

The occupational disease amendment as originally enacted in 1937 (Act. No. 61, Pub. Acts 1937, amending Act No. 10, Pub. Acts 1912 [1st Ex. Sess.]) and as in effect until July 30, 1943, provided:

### "Part 7.

"*Schedule of diseases.*

"Sec. 2. The disablement of an employee resulting from an occupational disease or condition described in the following schedule shall be treated as the happening of a personal injury by accident within the meaning of this act and the procedure and practice provided in this act shall apply to all proceedings under this part, except where specifically otherwise provided herein:

| "Disabilities arising from * * * | Caused by |
|---|---|
| "29. Stone worker's or grinder's phthisis | Quarrying, cutting, crushing, grinding or polishing of stone, or grinding or polishing of metal. |
| "30. Silicosis | Mining |
| "31. Pneumoconiosis | Quarrying, cutting, crushing, grinding or polishing of metal." |

It is defendant's contention that plaintiff has silicosis and not pneumoconiosis; that silicosis and pneumoconiosis are not synonymous terms; that

---

* 2 Comp. Laws 1929, § 8420, as amended by Act No. 325, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 8420, Stat. Ann. 1946 Cum. Supp. § 17.154).—Reporter.

under Act No. 61, Pub. Acts 1937, silicosis was compensable only if contracted in mining; that it did not become compensable when contracted otherwise until July 30, 1943, the effective date of the 1943 amendment (Act No. 245, Pub. Acts 1943 [Comp. Laws Supp. 1940, 1945, § 8485-1 *et seq.,* Stat. Ann. 1946 Cum. Supp. § 17.220 *et seq.*]); and that inasmuch as plaintiff was not engaged in mining and his last injurious exposure occurred prior to July 30, 1943, his condition is not compensable.

The same contention was advanced by the defendant in *Thomas* v. *Continental Motors Corp.,* 315 Mich. 27, wherein plaintiff sought compensation for the death of her husband resulting from an occupational disease. Plaintiff's decedent had been employed by defendant as a sand blaster, removing scale from steel with a stream of sand applied by an air hose, and had become disabled prior to July 30, 1943, the effective date of the all-inclusive amendment. While still employed by defendant, X-rays were taken of plaintiff's husband which revealed the presence of silicosis. Defendant claimed that death was due to silicosis and not pneumoconiosis and, therefore, was not compensable under the controlling statute for the very reasons advanced by defendant herein. Although the deceased had not been engaged in mining, he had been exposed to a silica dust hazard in his work. We held that the record supported the finding of the department that the disability and death of plaintiff's decedent was caused by pneumoconiosis resulting from sandblasting of metal and that it was compensable under Act No. 10, pt. 7, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937.

In *Stewart* v. *Lakey Foundry & Machine Co.,* 311 Mich. 463, claimant was likewise employed by the same defendant as a chipper in its foundry where he was exposed to silica dust. The medical testi-

mony set forth in that case fully supports that of plaintiff's second medical witness herein, to the effect that pneumoconiosis is the generic term applied to certain diseases of the lungs resulting from exposure to various kinds of dust, and that silicosis which results from exposure to silica dust is a specific condition embraced within the general category.

The schedule of occupational diseases contained in Act No. 10, pt. 7, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, above quoted, limited compensable disabilities arising from mining to a specific form of pneumoconiosis, *viz.*, silicosis, whereas disabilities resulting from the "quarrying, cutting, crushing, grinding or polishing of metal" were not so limited. The apparent intent of the legislature was to provide a broader base of recovery in the latter category. In the light of the foregoing distinction, we are satisfied that there is some testimony supporting the finding of the department that plaintiff's disabling condition is pneumoconiosis caused by "quarrying, cutting, crushing, grinding or polishing of metal," which was made compensable under Act No. 10, pt. 7, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937.

Defendant next contends that plaintiff's condition is not compensable because it was contracted prior to October 29, 1937, the effective date of Act No. 61, Pub. Acts 1937. Defendant supports this contention with its exhibit 1, an X-ray plate of plaintiff's chest taken on September 9, 1937, which, in the opinion of defendant's medical witness, indicated that plaintiff was afflicted with silicosis as of that date. In the case of *Krzewinski* v. *Robert Gage Coal Co.*, 304 Mich. 63, part 7, § 5, of the compensation act (repealed by Act No. 245, Pub. Acts 1943) was before this Court for construction. Said section provided, in part, that an employee would

not be entitled to compensation for disability from a dust disease unless the disease was contracted within 12 months previous to the date of disablement. Mr. Justice NORTH, writing for the Court, stated: "In order that the statute may be effective and purposeful, it must be construed as providing that the date of contracting starts when symptoms, appear," and quoted with approval the language used in *Kellerman* v. *City of St. Paul,* 211 Minn. 351 (1 N. W. [2d] 378), that a chronic disease (in that case coronary sclerosis) is contracted when "it first manifests itself so as to interfere with bodily functions."

The commission found that although plaintiff's last injurious exposure was on December 4, 1942, his disablement did not occur until December 13, 1945. The opinion of the commission states:

"His last injurious exposure was December 4, 1942, his last day of work as a chipper. We find that he had no injurious exposure after that date. No explanation is given in the record of why the plaintiff's work was changed from a chipper to a door-tender on said date, and the defendant stated on page 10 of its brief, filed with the commission, that as of such date 'in truth and in fact, there was no such disability,' that, 'Plaintiff merely changed jobs' on that day and that plaintiff was not disabled until December 13, 1945. There is no indication whatever in the record of any disability by reason of silicosis or pneumoconiosis until December 13, 1945. We, therefore, find that that date is the date of disablement."

Defendant claims that December 4, 1942, the day of plaintiff's last injurious exposure, is the controlling date; that plaintiff, therefore, must prove a compensable claim under Act No. 10, pt. 7, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub.

Acts 1937, under which the maximum recovery was $3,000; and that the commission in modifying the order of the deputy commissioner erroneously applied all of the amendatory acts, particularly Act No. 318, Pub. Acts 1945 (effective May 28, 1945), which provided for a maximum recovery of $6,000. Defendant relies on the case of *Thomas* v. *Continental Motors Corp.*, *supra,* wherein it was held that the test of an employee's right to compensation is his inability to work and earn wages in the employment at which he was engaged when the disability occurred. In that case plaintiff was employed as a sand blaster and it was shown that he was transferred to other work because of the conditions of his lungs. In the instant case, however, there is nothing to indicate that plaintiff was transferred to other work because of any physical disability. Although defendant claims that, as a result of an X-ray examination, it had knowledge of plaintiff's condition in the latter part of 1937, it continued to employ plaintiff as a chipper for more than five years thereafter. There is no testimony that defendant informed plaintiff of his condition or that plaintiff had any knowledge of his affliction when he was transferred to other duties in December, 1942. Accordingly, the commission found that the date of disablement was December 13, 1945, the day on which plaintiff left defendant's employ because of the disabling effect of his occupational disease. The record fully supports the commission's finding. In *Rueter* v. *Rinshed Mason Co.,* 303 Mich. 550, we held that part 7, § 4, of the act makes the date of disablement the controlling factor in determining the aggregate amount of the compensation payable.

In determining benefits under the act that law controls which is in effect when the cause of action accrues. *Mason* v. *Michigan Trading Corp.,* 308

Mich. 702; *Allen* v. *Kalamazoo Paraffine Co.*, 312 Mich. 575; *Thomas* v. *Continental Motors Corp.*, *supra*. Plaintiff's cause of action accrued on December 13, 1945, the date of disablement, at which time part 7, § 4, of the act authorized a maximum recovery of $6,000. We have frequently held that the workmen's compensation act and the amendments relating thereto should be read and construed together. *Stewart* v. *Lakey Foundry & Machine Co.*, *supra*; *Rueter* v. *Rinshed Mason Co.*, *supra*; *Sutter* v. *Kalamazoo Stove & Furnace Co.*, 297 Mich. 226. In accordance with the method of computation approved by this Court in the *Stewart Case*, the commission properly determined that plaintiff became disabled in the 99th calendar month after the 1937 act became effective and is entitled to the maximum benefit of $6,000, as provided in the 1945 amendment to part 7, § 4, of the act.

Finally, defendant raises the applicability of Act No. 10, pt. 7, § 5, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, which, as we have already observed, under our holding in *Krzewinski* v. *Robert Gage Coal Co.*, *supra*, would not preclude plaintiff's recovery in the instant case. Furthermore, said section was repealed by Act No. 245, § 2, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8485-15), and was not in effect on December 13, 1945, the date of disablement, when plaintiff's cause of action accrued.

The award of the department is affirmed. Plaintiff may recover costs.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.