REA v REGENCY OLDS/MAZDA/VOLVO

Docket No. 157269. Submitted February 1, 1994, at Detroit. Decided
April 18, 1994, at 9:00 A.M. Leave to appeal sought.

Kenneth J. Rea sought workers' compensation benefits from
Regency Olds/Mazda/Volvo and its workers' compensation in-
surer, Citizens Insurance Company, after he was injured while
working as a parts clerk. A magistrate found the plaintiff
partially disabled and awarded benefits for an open period. The
Workers' Compensation Appellate Commission modified the
award to one for a closed period only, finding that the magis-
trate erred in entering an open award because he misconstrued
the applicable definition of disability. The plaintiff appealed by
leave granted.

The Court of Appeals *held:*

1. The definition of disability provided in MCL 418.301(4);
MSA 17.237(301)(4), as amended by 1987 PA 28, effective May
14, 1987, applies in this case.

2. "Disability" means a limitation of an employee's wage-
earning capacity in work suitable to the employee's qualifica-
tions and training resulting from a personal injury or work-
related disease.

3. Disability exists where an employee suffers any limitation
in wage-earning capacity in work suitable to the employee's
qualifications and training. The WCAC erred in requiring a
complete loss of wage-earning capacity in suitable work.

4. The plaintiff, who was employed at unskilled labor, is
disabled because he has suffered a limitation in his ability to
perform work suitable to his qualifications and training, in
particular, the work he previously was doing for Regency,
because his doctor has imposed a lifting restriction for at least
one year. He is disabled even though he may be capable of
performing other unskilled work that falls within his medical
restrictions.

Order of the Workers' Compensation Appellate Commission
reversed; the magistrate's open award of benefits reinstated.

REFERENCES
Am Jur 2d, Workers' Compensation §§ 4, 379-381.
See ALR Index under Workers' Compensation.

WORKERS' COMPENSATION — DISABILITY.
"Disability" for purposes of workers' compensation means a
limitation of an employee's wage-earning capacity in work
suitable to the employee's qualifications and training resulting
from a personal injury or work-related disease that occurs on
or after May 14, 1987; an employee is disabled if the employee
suffers any limitation in wage-earning capacity in work suitable
to the employee's qualifications and training (MCL 418.301[4];
MSA 17.237[301][4], as amended by 1987 PA 28).

*Fowler, Tuttle, Clark & Coleman* (by *Larry D. Fowler*), for the plaintiff.

*Sinn, Day, Felker, Chinitz, Lovernick & Roggenbaum, P.C.* (by *William A. Day*), for the defendants.

Before: SHEPHERD, P.J., and MARILYN KELLY and J. H. GILLIS, JR.,* JJ.

MARILYN KELLY, J. Plaintiff appeals by leave granted from an order of the Worker's Compensation Appellate Commission. The Commission modified a magistrate's award of benefits for an open period to one for a closed period only. Plaintiff argues that the WCAC misinterpreted the change in the definition of "disability" made by a 1987 amendment to the Worker's Disability Compensation Act. MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.* We agree and reverse.

I

Defendant employed plaintiff as a parts clerk. Plaintiff's primary function was to identify and procure parts requested by both mechanics and customers ranging from modules weighing only ounces to wheels and fenders.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff testified that at work on September 1, 1989 he slipped on stairs while carrying four cases of oil filters. Although he did not fall, his efforts to maintain balance and not drop the merchandise forced him to significantly jerk and twist. He experienced a pulling or popping sensation in his neck followed by discomfort in his neck and right shoulder area.

The incident occurred on the Friday before Labor Day. Plaintiff testified that he experienced considerable stiffness and discomfort over the weekend. Upon returning to work the next week, he reported the incident and was sent to a medical center for treatment. He never returned to work for his employer, although he testified that he was willing to do so if offered work within his medical restrictions.

Dr. Jakubiak diagnosed a disc injury, the normal symptomatology of which corresponded to plaintiff's complaints of neck, right shoulder and right arm pain. Following an examination of plaintiff in November 1990, Dr. Jakubiak prescribed a course of physical therapy, scheduled to be completed in March 1991. When he last saw plaintiff on February 21, 1991, Dr. Jakubiak found him to be functional with no neurological deficits and without any incapacitating pain. Nevertheless, he testified, he imposed restrictions for a one-year period, including a prohibition against lifting more than twenty to twenty-five pounds. It was a precautionary measure aimed at preventing reaggravation of the condition.

On February 21 and October 15, 1990, at defendant's request Dr. Baker also examined plaintiff. Although the doctor noted that plaintiff complained of continuing pain and stiffness, he opined that plaintiff could return to unrestricted work activity.

In an opinion mailed May 29, 1991 the magistrate found plaintiff partially disabled as a result of a September 1, 1989 work-related injury.

> Plaintiff has preponderated in establishing an employment related injury occurring on September 1, 1989. The proofs further preponderate in establishing that this injury resulted in a small disc defect at the C5-C6 level triggering neck, right shoulder and arm discomfort. While there has been acknowledged improvement in plaintiff's condition, we are persuaded by Dr. Jakubiak's testimony that he remains at least temporarily disabled from unrestricted work activity. The proofs fail to establish that plaintiff has been proffered work activity within the guidelines set forth by Dr. Jakubiak.

The magistrate awarded benefits for an open period, meaning until further order.

Defendant appealed, and in a decision and order dated September 21, 1992, the WCAC modified the magistrate's award by closing it as of February 21, 1991. In an opinion by Commissioner Skoppek, joined by Commissioner Wyszynski, the WCAC found that substantial evidence on the whole record supported the magistrate's findings of fact. However, it ruled that the magistrate erred in entering an open award because he misconstrued the applicable definition of "disability."

The Legislature amended § 301(4) of the Act, MCL 418.301(4); MSA 17.237(301)(4) by 1987 PA 28 as follows:

> As used in this chapter, "disability" means a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss.

The WCAC majority noted that after February 21, 1991 Dr. Jakubiak released plaintiff to return to work. The only restrictions were a prohibition on lifting more than twenty to twenty-five pounds and on certain pushing and carrying activities, as a precaution to prevent reaggravation. The majority concluded that plaintiff was not disabled within the meaning of the new definition for the following reasons:

> After receiving a return to work release from Dr. Jakubiak in 1991, plaintiff began working for Rod's Auto & Truck Service in April. He held the same position as he had previously had with defendant employer, as a parts clerk, and also performed some oil changes, brake jobs and mechanical work. All of this work involved extensive physical activity. Plaintiff testified that he was able to perform this job without any physical problems.
>
> Based on this evidence and the magistrate's particular reliance on the testimony of Dr. Jakubiak, it is clear that plaintiff was no longer disabled as of the February 21, 1991, examination by said doctor. There is no evidence that any restrictions remaining after that date produced a limitation of wage earning capacity in work suitable to plaintiff's qualifications and training. MCL 418.301(4) [MSA 17.237(301)(4)].

Commissioner Goolsby dissented, expressing the opinion that the majority had misinterpreted the new definition of disability. In Commissioner Goolsby's opinion, plaintiff had a limitation in wage earning capacity within his qualifications and training, because Dr. Jakubiak imposed a lifting restriction as a result of the work-related injury. In his opinion, the majority improperly interpreted the new definition to be equivalent to the standard of disability for retirees set forth in

§ 373(1) of the Act, MCL 418.373(1); MSA 17.237(373)(1). Although Commissioner Wyszynski was in complete agreement with Commissioner Skoppek's controlling opinion, he wrote separately to take issue with the dissent.

This Court granted plaintiff's application for leave to appeal in order to address the meaning of the new definition of disability.

## II

Before 1982, § 301 contained no definition of disability. However, case law had long distinguished two general classifications of employment: skilled and common labor. A skilled employee was considered disabled if unable to perform skilled labor. An unskilled employee was disabled if the employee had suffered any limitation on wage-earning capacity in the entire field of unskilled labor as a result of the work-related injury. *Adair v Metropolitan Building Co,* 38 Mich App 393, 403; 196 NW2d 335 (1972).

In 1982 the Act was amended. At § 301(4), "disability" was defined as "a limitation of an employee's wage earning capacity in the employee's general field of employment." This statutory definition arguably made no change in the existing law, and in practice was interpreted as a legislative codification of the long-standing judicial definition of disability. Finally, in 1987, § 301(4) was amended and "disability" is now defined as a "limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training." Because plaintiff was injured after May 14, 1987, the new definition applies in this case. *Turrentine v General Motors Corp,* 198 Mich App 572; 499 NW2d 411 (1993).

In *Fraley v General Motors Corp,*[1] this Court rejected the employer's argument that the employee could not satisfy the new definition of disability. Citing *Turrentine,* we held that the new definition did not apply, because the employee had been injured before the effective date of the new definition. Nonetheless, we considered whether the employee had proven by a preponderance of the evidence that he was disabled within the meaning of the new definition.

> In the present case, the WCAC applied the definition of disability to the facts and held as a legal conclusion, as discussed above:
> "The record establishes that working around loud noises was what plaintiff did for most of his tenure at defendant. It was, therefore, work suitable to his qualifications and training. It is no longer suitable. He thus has a limitation in his wage-earning capacity under any statutorily valid definition of disability. The work he can still do establishes some earning capacity. The fact of work that he can no longer do safely establishes a limitation in wage-earning capacity."
> Plaintiff's loss of high-frequency hearing limits his wage-earning capacity not only in the general field of his employment but also in work suitable to his qualifications and training. Because of his loss of high-frequency hearing and the further diminution of his hearing that would result from exposure to the loud noises of his workplace, plaintiff has suffered a limitation of his wage-earning capacity in work suitable to his qualifications and training. [199 Mich App 284-285.]

Therefore, *Fraley*'s dicta agreed with the dissenting commissioner in this case that an employee is "disabled" under the new definition if he has lost any earning capacity in suitable work.

---

[1] *Fraley v General Motors Corp,* 199 Mich App 280, 283; 500 NW2d 767 (1993).

We concur with the *Fraley* dicta. We hold that an employee is "disabled" under the new definition if the employee suffers from any limitation in wage-earning capacity in work suitable to the employee's qualifications and training. We reject the WCAC majority's implicit interpretation of the new definition which requires a complete loss of wage-earning capacity in suitable work to establish a disability.

We agree with the following excerpts from Welch, Worker's Compensation in Michigan: Law & Practice (rev ed):

> The 1987 amendments changed the universe of jobs to which a worker's ability is compared. Under the old law this was his or her "field of employment." Under the new definition it is "work suitable to his or her qualifications and training." For an unskilled worker "field of employment" meant all unskilled jobs. Now, however, the worker must show a limitation in the more narrow area of "work suitable to his or her qualifications and training." [§ 8.10, p 8-11.]
>
> The new definition also makes a substantive improvement in Michigan's law by closing a serious loophole. As indicated above, under the old law an unskilled worker was considered disabled if he or she had any limitation on his or her wage-earning capacity in the entire field of unskilled employment. *Adair v Metropolitan Building Co,* 38 Mich App 393, 196 NW2d 335 (1972). Now a worker must show a limitation on the capacity to perform work suitable to his or her qualifications and training.
>
> Assume that Mary Jones is a clerk/typist, which is considered unskilled labor. If Mary suffers a serious back injury, she will probably have a period of time during which she cannot perform any work at all. She is clearly entitled to compensation benefits. Assume further, however, that eventually Mary recovers to the point where she can do

everything except very heavy lifting. Mary now has no limitations on her capacity to perform work as a clerk/typist, but she cannot go out and unload trucks. Since both the work of a clerk/typist and the work of unloading a truck fall within the category of unskilled labor, they are both within the same "field of employment." Thus Mary does have a limitation on her ability to perform work in her field of employment, and under the old law she would be considered disabled. Under the new law, we will look at work suitable to Mary's qualifications and training. This will probably involve a large variety of clerical jobs, including not only the work of clerk/typist but the work of a file clerk and perhaps a receptionist. But it will certainly not include unloading trucks. Mary will not have any limitations on her capacity to perform work suitable to her qualifications and training, and accordingly she will not be considered disabled. [§ 8.11, p 8-14.]

In the instant case, defendant does not dispute that plaintiff was employed at common or unskilled labor. It is also undisputed that, as of February 1991, Dr. Jakubiak imposed a lifting restriction for at least a year. His testimony was accepted by both the magistrate and the WCAC. Because there is no evidence to suggest that the restriction has been removed, plaintiff is disabled within the meaning of the new definition: he has suffered a limitation in his ability to perform work suitable to his qualifications and training, in particular the work he was previously doing for defendant. He is disabled even though he may be capable of performing other unskilled work which falls within his medical restrictions.

Accordingly, we reverse the WCAC and reinstate the magistrate's open award of benefits.